UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ASHOK KADAMBI, M.D., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-CV-321 JD |
| | ) | |
| EXPRESS SCRIPTS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This case arises from a dispute regarding the fulfillment of prescriptions for HGH,

written by plaintiff Dr. Ashok Kadambi. The other plaintiffs are eight of his patients, for whom

the prescriptions were written. The plaintiffs claim that the defendants—several mail-order

pharmacies—are liable for failing to fulfill the prescriptions as written. Plaintiffs' currently

operative Amended Complaint [DE 58] alleges three claims: Breach of Duty to Honor

Prescription (Count 1); Defamation (Count II); and Breach of Settlement Agreement (Count III).

Now before the Court are two motions in which the defendants seek to have each of the claims

dismissed: (1) Defendants' Motion for Judgment on the Pleadings as to Count I [DE 62] and (2)

Defendants' Motion to Dismiss Defamation Claims (Counts II and III) Pursuant to Indiana's

Anti-SLAPP Act [DE 64].[1]

For the reasons stated below, the Motion for Judgment on the Pleadings as to Count I is

**GRANTED** [DE 62] and the Motion to Dismiss Defamation Claims (Counts II and III) Pursuant

to Indiana's Anti-SLAPP Act is **GRANTED IN PART** and **DENIED IN PART** [DE 64].

---

[1] Also pending is a Motion for Preliminary Injunction, filed by the plaintiffs. [DE 54.] Briefing on that motion has been stayed pending a decision on the two motions addressed in this opinion. As discussed more fully below, in light of the resolution of the other pending motions, the Court denies the Motion for Preliminary Injunction without prejudice.

# I.  Factual Background

Dr. Kadambi is a physician specializing in Endocrinology in Fort Wayne, Indiana. For at least eight of his patients, who are plaintiffs in this lawsuit, Dr. Kadambi prescribed human growth hormone ("HGH"). The plaintiffs allege that the prescriptions were "independently evaluated and determined to be medically necessary for each patient" and that the prescriptions were approved by the insurance companies of the patients. However, starting in 2010, the defendant pharmacies began refusing to honor the HGH prescriptions from Dr. Kadambi. Plaintiffs also claim that representatives from defendant Accredo made defamatory statements to several of the plaintiffs regarding Dr. Kadambi.

Defendants contend that their refusal to honor the prescriptions was based on concern with potential violations of federal law. 21 U.S.C. § 333(e) makes it a crime to knowingly distribute HGH for use in humans "other than the treatment of a disease or other recognized medical condition, where such use has been authorized by the Secretary of Health and Human Services under section 355 of [Title 21] and pursuant to the order of a physician." They state that another of Express Scripts's affiliated pharmacies—Specialty Distribution Services—previously entered into a deferred prosecution agreement ("DPA") related to the distribution of HGH and that the protocols employed in this case were developed in light of that DPA in order to shield their pharmacists from potential criminal liability. They further claim that through information obtained during their due diligence, the pharmacies formed a good faith belief that Dr. Kadambi prescribed HGH for non-medically acceptable reasons, or was at the very least associated with organizations that advocate for off-label uses of HGH. Accordingly, they declined to honor the prescriptions as written and explained that decision to the patients in telephone conversations. This suit followed.

Dr. Kadambi has previously brought a similar lawsuit regarding the fulfillment of HGH prescriptions, which was also assigned to the undersigned judge. *Kadambi v. Express Scripts, Inc.*, No. 3:12-cv-44. In that suit, Dr. Kadambi sued Express Scripts as the only defendant, and alleged claims of defamation, intentional interference with a business relationship, and intentional interference with a contractual relationship. That suit was resolved through a settlement agreement between Dr. Kadambi and Express Scripts. [DE 71 at 15–18.] One term of that agreement states "Express Scripts shall not issue any defamatory statements about [Dr. Kadambi] or his practice group, Fort Wayne Endocrinology, and Express Scripts reserves all rights, claims and defenses to any claim based on any alleged defamatory statement." [*Id.* at 15–16.]

## II.     Motion for Judgment on the Pleadings

Defendants first move for judgment on the pleadings as to Count I. They argue that the statute on which Plaintiffs base Count I (Indiana Code section 25-26-13-16) does not provide for a private right of action and, accordingly, the claim should be dismissed.

## A.     Standard of Review

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Therefore, the court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Matrix IV, Inc. v. Am. Nat'l Bank and Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir.2011). To survive the motion, the complaint must contain enough facts to state a claim for relief that is plausible on its face. *Brooks v. Ross*, 578 F.3d 574, 580–81 (7th

Cir.2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir.2011) (explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action supported by mere conclusory statements. *Id.* at 616.

The failure of a statute to provide for a private right of action is a valid basis on which judgment may be entered on the pleadings. *See Leatham v. City of LaPorte*, No. 3:07-CV-220, 2008 WL 4224940, at *6 (N.D. Ind. Sept. 10, 2008).

**B.      Discussion**

Count I is premised solely on an alleged breach of Indiana Code section 25-26-13-16. That statute states:

> (a) A pharmacist shall exercise his professional judgment in the best interest of the patient's health when engaging in the practice of pharmacy.
>
> (b) A pharmacist has a duty to honor all prescriptions from a practitioner or from a physician, podiatrist, dentist, or veterinarian licensed under the laws of another state. Before honoring a prescription, the pharmacist shall take reasonable steps to determine whether the prescription has been issued in compliance with the laws of the state where it originated. The pharmacist is immune from criminal prosecution or civil liability if he, in good faith, refuses to honor a prescription because, in his professional judgment, the honoring of the prescription would:
>
> > (1) be contrary to law;
> > (2) be against the best interest of the patient;
> > (3) aid or abet an addiction or habit; or
> > (4) be contrary to the health and safety of the patient.

Defendants argue that the statute does not provide a private right of action and, therefore, judgment should be entered in their favor. Plaintiffs argue that the statute does provide a private right of action.[2] Sitting in diversity, the Court will rely on the substantive law of Indiana and attempt to predict how the Indiana Supreme Court would decide the issue presented here. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999) ("Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.").

No Indiana court has ever considered the question of whether section 25-26-13-16 provides for a private right of action. However, Indiana courts have "long-standing analytical tools" to be used in deciding whether such a right exists. *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 186–87 (Ind. 2011) (quoting *Kho v. Pennington*, 875 N.E.2d 208, 218 (Ind. 2007)). The question is one of law for the Court to decide and focuses on the question of legislative intent. *Id.* at 187.

The legislature can create a private right of action in one of two ways. The first is explicitly. *Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 509 (Ind. 2005) ("Sometimes the Legislature will be quite explicit in providing that persons with appropriate standing are entitled to go to court and ask for enforcement of a statute's provisions."). The Indiana legislature states quite clearly when it intends to create an explicit right of action. *See* Ind. Code § 22-9.2-7-1 ("An aggrieved person may file a civil action in the circuit or superior court located in the county in which the alleged discriminatory practice occurred"); § 8-23-20-12 ("the claimant may file a

---

[2] Alternatively, plaintiffs argue that they are entitled to recovery "based on the Defendants['] interference with the physician patient relationship between Kadambi and the Patient Plaintiffs." [DE 70 at 8.] Plaintiffs then analyze the potential merits of this claim. [*Id.* at 8–11.] However, Plaintiffs have not included such a claim in their currently operative complaint and have not sought leave to amend their complaint to include such a claim. *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Accordingly, that claim is not currently before the Court and the Court does not address it at this time.

civil action to have the compensation determined"); § 22-9-1-17 ("If a timely election is made under section 16 of this chapter, the complainant may file a civil action in a circuit or superior court having jurisdiction in the county in which a discriminatory practice allegedly occurred."). The legislature did not make any such explicit statement of a private right of action in section 25-26-13-16.

The other possibility is that the legislature impliedly conferred a private right of action. "[A] private cause of action generally will be inferred where a statute imposes a duty for a particular individual's benefit but will not be where the Legislature imposes a duty for the public's benefit." *Blanck*, 829 N.E.2d at 509. "As a general rule, a private party may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1260 (Ind. 2000); *see also Howard*, 952 N.E.2d at 187 ("A private party may not usually enforce rights under a statute designed to protect the public in general and which contains an enforcement provision."). "But even where a duty benefits an individual, [Indiana courts] will not infer a private right of action unless that appears to be the Legislature's intent." *F.D. v. Indiana Dep't of Child Servs.*, 1 N.E.3d 131, 143 (Ind. 2013) (Rush, J., concurring in part and dissenting in part). "Indiana courts have rarely concluded the Legislature intended to confer a private right of action." *Id.*

Here, the Court concludes that the statute at issue does not imply a private cause of action. Initially, the Court notes that the statute appears to primarily benefit the public at large, rather than any specific individual. Section 25-26-13-16 appears within a chapter titled "Regulation of Pharmacies and Pharmacists." Other portions of that chapter create the Board of Pharmacy. Ind. Code § 25-26-13-3. Power is vested in that Board to, among other things, promulgate rules for implementing and enforcing the chapter and to investigate complaints

arising under the chapter. *Id.* at § 25-26-14-4(a)(1), (7). Additionally, the legislature was clear regarding the purpose of that particular chapter:

> **Public Interest.** The practice of pharmacy is declared to be a professional occupation in the state of Indiana, affecting the public health, safety, and welfare and must be subject to regulation and control in the public interest by the board of pharmacy. It is further declared to be a matter of public interest and concern that the practice of pharmacy merit and receive the confidence of the public and that only qualified persons be permitted to practice pharmacy in the state of Indiana.

*Id.* at § 25-26-14-1.

Moreover, section 25-26-13-16 is located within a regulatory scheme that contains comprehensive enforcement mechanisms. First, the Board of Pharmacy is empowered to "investigate complaints, subpoena witnesses, schedule and conduct hearings on behalf of the public interest on any matter under the jurisdiction of the board." *Id.* at § 25-26-13-4(a)(7). With respect to court action, the chapter empowers the Attorney General to "apply for an injunction in the circuit court of the county wherein a violation of this chapter is occurring." *Id.* at § 25-26-13-28.

In this way, section 25-26-13-16 is similar to the statute analyzed in *Roberts v. Sankey*, 813 N.E.2d 1195 (Ind. Ct. App. 2004). In *Roberts*, the plaintiffs brought a claim premised on Indiana Code section 16-21-2-7, which imposes certain requirements on hospital medical staff. *Id.* at 1198. The Court of Appeals analyzed whether the statue provided a private cause of action and found that it did not. In doing so, the Court of Appeals looked to those portions of the code surrounding the statute at issue and noted both that the particular section was located in a chapter "intended to address the State's responsibility to license and regulate hospitals for the protection of hospital patients" and that it contained a "comprehensive enforcement scheme" that had been

"placed in the hands of the State." *Id.* at 1199. In the same way, the statute relied on by plaintiffs is part of a broad regulatory scheme with enforcement mechanisms designed primarily to regulate the practice of pharmacy in Indiana, for the benefit of the medicine-consuming public. As such, the Court cannot infer the legislature's intent to provide a private right of action for a claimed violation of the provisions of the chapter.

None of the arguments offered by the plaintiffs dissuade the Court from this analysis. The plaintiffs first argue that section 25-26-13-16 provides civil immunity to a pharmacist if the refusal to honor a prescription is made in good faith and that this immunity "would be unnecessary if the statute did not impose a private right of action." [DE 70 at 3.] This is similar to the argument raised by the plaintiffs in *Howard*, who argued that a statute providing civil immunity "implicitly recognizes that there is civil liability" on the part of a defendant if it violates such a statute. *Howard*, 952 N.E.2d at 186. However, the Indiana Supreme Court rejected that argument, finding that neither the legislative history nor statutory construction rules supported finding a private right of action on that basis. *Id.* For that same reason, plaintiffs' argument here fails.

Plaintiffs next argue that "at least one private cause of action has been brought under" section 25-26-13-16. [DE 70 at 3.] They cite to *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 417 (Ind. 1994) and *Kolozsvari v. Doe*, 943 N.E.2d 823 (Ind. Ct. App. 2011). However, neither case was actually brought as a private right of action under the statute cited by the plaintiffs. Rather, the Indiana courts looked to the statute only to determine whether the defendants owed some duty as part of a common law claim for negligence. *Hooks*, 642 N.E.2d at 517 (finding duty to refrain from dispensing a prescription as written based on professional expertise of pharmacist); *Kolozsvari*, 943 N.E.2d at 829 ("[W]e hold that CVS and Branchfield

had a duty of care to Christine either to warn Christine of the side effects of OsmoPrep or to withhold the medication."). Furthermore, neither of those cases addressed the claim that plaintiffs bring in this case, namely a duty to fulfill a prescription. So the Court finds those cases inapplicable, as neither involved a claim based upon the Indiana statute.

Finally, plaintiffs argue that section 25-26-13-16 is included in an Indiana Code chapter which lists statutes that confer immunity. [DE 70 at 4.] Plaintiffs' argument here is that the statute must confer a private right of action, because it is included "in title 34 of the Indiana Code which deals with Civil law and procedure." [*Id.*] However, defendants correctly note that inclusion in chapter 34-30-2 does not necessarily infer a private right of action. Rather, in several instances, Indiana courts have found that statutes listed in that chapter do not provide for a private cause of action. *See, e.g.*, *C.T. v. Gammon*, 928 N.E.2d 847, 854 (Ind. Ct. App. 2010) (finding no private right of action in section 31-33-6-1, which is listed at 34-30-2-134); *Howard*, 952 N.E.2d at 187 (finding no private right of action in section 16-39-7-1, which is listed at 34-30-2-77.8).

This is not to say that the plaintiffs have no remedy if they believe the defendants are failing to comply with the Indiana pharmaceutical laws. The Indiana legislature has provided a mechanism by which any person may file a complaint with the Director of the Indiana Attorney General Consumer Protection Division. Ind. Code § 25-1-7-4. Upon the filing of such a complaint, the Director reviews the complaint and, if merited, submits the complaint for review by the Board of Pharmacy. *Id.* at 25-1-7-5. It appears to the Court that this mechanism—rather than the claim brought in this lawsuit—is the recourse available to plaintiffs under Indiana law.

Based on this analysis, the Court finds that the Indiana legislature did not intend to provide a private right of action in section 25-26-13-16. Accordingly, the Court finds that the

plaintiffs have not stated a plausible claim for relief in Count I. Defendants' Motion for Judgment on the Pleadings as to Count I is therefore **GRANTED**. Judgment will be entered in favor of defendants and against plaintiffs on Count I. Because Count I is the only count in which the patient plaintiffs are named, plaintiffs Linda Hinant, Nancy Hunt, Sharon Yost, Theresa Bauserman, Ronald Sheron, Darryl Starr, Amanda Partyaka, and Lorna Secunda are **DISMISSED** from this case.

### III.    Motion to Dismiss under Anti-SLAPP Act

The defendants next move to dismiss the other two counts of the Amended Complaint, which relate to allegations of defamation.[3] They caption the motion as one to dismiss under the Indiana Anti-SLAPP Act, but the motion also addresses two other issues: qualified privilege and whether certain of the defendants stand in privity to the contract that plaintiffs allege was breached in Count III. And although the motion is titled as one to dismiss the claims, all parties agree that the motion is properly treated—at least with respect to the anti-SLAPP issues—as one for summary judgment.[4] Each of the arguments is discussed in turn, below.

### A.    Anti-SLAPP

SLAPP stands for "Strategic Lawsuit Against Public Participation." *Poulard v. Lauth*, 793 N.E.2d 1120, 1122 n.2 (Ind. Ct. App. 2003). Anti-SLAPP statutes are a reasonably new phenomenon—Indiana's was passed in 1998—and are designed to "reduce the number of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Id.* Suits subject to dismissal under the Anti-

---

[3] Count II is a claim of common law defamation brought by Dr. Kadambi. Count III is a claim for breach of contract, namely the settlement agreement from Dr. Kadambi's earlier suit against Express Scripts. The acts that Dr. Kadambi claims breached the settlement agreement are the same statements identified as defamatory in Count II.

[4] For the reasons stated below, the Court concludes that the qualified privilege portion of the motion should also be treated as a summary judgment motion, but that the privity argument need not be converted to a summary judgment since its determination does not require consideration of any material outside the complaint.

SLAPP Act are "meritless suits aimed at silencing a plaintiff's opponents, or at least diverting their resources." *Nexus Group, Inc. v. Heritage Appraisal Serv.*, 942 N.E.2d 119, 122 (Ind. Ct. App. 2011).

### 1. Standard of Review

Although titled as a motion to dismiss, both Indiana statute and the Federal Rules of Civil Procedure treat a motion to dismiss on anti-SLAPP grounds as a motion for summary judgment. Ind. Code § 34-7-7-9(a)(1) ("If a person files a motion to dismiss under this chapter, the court in which the motion is filed shall . . . [t]reat the motion as a motion for summary judgment."); Fed. R. Civ. P. 12(d) (converting to summary judgment a motion which includes facts outside the pleadings). Once treated as a summary judgment motion, the motion should be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion should be granted only if no rational fact-finder could decide in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must view all of the evidence in the light most favorable to the non-moving party and must resolve all factual disputes in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

### 2. Discussion

Indiana's anti-SLAPP statute is "typical" of other state anti-SLAPP statutes. *Poulard*, 793 N.E.2d at 1122 n.2. It provides:

> It is a defense in a civil action against a person that the act or omission complained of is:
>
> > (1) an act or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and

> (2) an act or omission taken in good faith and with a
> reasonable basis in law and fact.

Ind. Code § 34-7-7-5. If successful in having a claim dismissed under the act, the defendant is entitled to reasonable attorneys' fees. *Id.* at § 34-7-7-7. Conversely, if the Court finds that the anti-SLAPP motion was either "frivolous" or "solely intended to cause unnecessary delay," then the plaintiff is entitled to reasonable attorneys' fees. *Id.* at § 34-7-7-8.[5]

The Court begins with the issue of whether the defendants acted "in furtherance of [their] right of petition or free speech . . . in connection with a public issue." The Court finds, based on the current record, that the defendants have not met their burden on this issue, and so finds that question dispositive of the anti-SLAPP portion of the motion.

"The person who files a motion to dismiss [under anti-SLAPP] must state with specificity the public issue or issue of public interest that prompted the act in furtherance of the person's constitutional right of petition or free speech." *Brandom v. Coupled Products, LLC*, 975 N.E.2d 382, 385 (Ind. Ct. App. 2012) (citing Ind. Code § 34-7-7-9). "Speech is on a matter of public concern if it is addressed to 'any matter of political, social, or other concern to the community,' as determined by its content, form, and context." *Id.* at 386 (quoting *Love v. Rehfus*, 946 N.E.2d 1, 10 (Ind. 2011)). Indiana courts have not spoken "at length" regarding whether speech relates to a matter of public concern in the anti-SLAPP context, but has noted with approval the analysis of California courts on that topic. *Id.* (citing *Cross v. Cooper*, 197 Cal. App. 4th 357 (2011)). In that context, California courts have recognized three non-exclusive categories of statements that

---

[5] The statute contains a number of other procedural rules for handling anti-SLAPP motions, but those procedures are not applicable to this Court. Once a case is removed to federal court, federal law and rules govern all procedural aspects of the case. *See Containment Techs. Group, Inc. v. Am. Society of Health Sys. Pharmacists*, No. 1:07-cv-997, 2009 WL 2750093, at *4 (S.D. Ind. Aug. 26, 2009) (declining to impose state procedural requirements in anti-SLAPP motion brought in federal court). Moreover, the continuing validity of some of those rules are in question even in Indiana state courts. *See id.* at *3.

have been given anti-SLAPP protection: (1) "cases where the statement or activity precipitating the underlying cause of action was 'a person or entity in the public eye'"; (2) "cases where the statement or activity precipitating the underlying cause of action 'involved conduct that could affect large numbers of people beyond the direct participants'"; and (3) "cases where the statement or activity precipitating the claim involved 'a topic of widespread, public interest.'" *Id.* (quoting *Cross*, 197 Cal. App. 4th at 373–74 (citations omitted)).

Here, defendants argue that their statements were related to their offering of pharmaceutical services and that the Indiana legislature has declared the occupation of pharmacy to "affect[] the public health, safety, and welfare" and to be "a matter of public interest." [DE 65 at 11–12.] They also argue that the statements were made in one-on-one conversations with Accredo representatives and were directly related to the fulfillment of their prescriptions. [*Id.* at 12.] Dr. Kadambi argues that this interest is too broad and that "[i]f such a broad inference were to succeed than there would be almost no limit to what is a matter of public interest." [DE 72 at 15.]

The Court agrees with Dr. Kadambi on this point and finds a logical disconnect between the proffered public interest and the context, form, and content of the statements actually at issue in this case. While defendants assert a broad public interest in pharmaceutical services—which this Court does not doubt—the actual statements at issue here are significantly more narrow in scope. Instead, the statements at issue were several explanations, each to a single patient, regarding why a single prescription could not be filled. These conversations took place over the phone, when prompted by a question from the patient regarding the reason the prescription would not be disbursed, and were not (as far as the Court can tell) disseminated any further.

In this context, the Court finds persuasive the rationale of *Fouse v. Shin*, No. B194495, 2007 WL 2353364 (Cal. Ct. App. Aug. 20, 2007).[6] That case, like this one, dealt with statements made by a pharmacist to an individual patient regarding the ability of the pharmacist to dispense medication as prescribed. The pharmacist made statements to and asked questions of the patient, in order to help determine whether dispensing the medication was consistent with California law. The patient sued and the pharmacist moved to dismiss on anti-SLAPP grounds. The anti-SLAPP motion was dismissed, in part, because the court found no public interest in the more narrow question of the patient's individual health. *Id.* at *6 ("the mere fact that the Medi-Cal guidelines requiring Shin's inquiry into plaintiff's medical condition were presumably designed to further a legitimate public purpose does not mean that the inquiry itself was a matter of public interest or debate.").

Similar reasoning persuades the Court to reach a similar result in this case. While the practice of medicine and pharmacy, on the macro level, is no doubt of great interest to the general public, the public interest in the more narrow issues addressed in the statements made by the Accredo personnel is not significant. Specifically, defendants offer no evidence that either Dr. Kadambi or the patients at issue is a person "in the public eye." *Brandom*, 975 N.E.2d at 385. Nor is there any evidence that the alleged conduct by Dr. Kadambi "could affect large numbers of people beyond the direct participants" or that Dr. Kadambi's prescription practices or the medical needs of the patients at issue is "a topic of widespread, public interest." *Id.* Without this more narrow focus on the public interest at issue, the Court believes that the anti-SLAPP protections would paint with too broad a brush, providing immunity to any statement made by

---

[6] The Court recognizes that *Fouse* is an unpublished decision and that Cal. R. Ct. 8.1115 restricts the citation of unpublished opinions in California state courts. However, the fact that the parties may not cite the opinion does not prohibit the Court from finding its reasoning persuasive in a case presenting a somewhat similar factual issue.

pharmaceutical personnel simply by virtue of the fact that the industry in which they practice is one of general concern to the public.

Further, the Court cannot find that Accredo's statements were made "in furtherance of" any free speech rights. Defendants have made clear that their purpose in making the statement was to communicate the reason for declining to dispense the prescriptions at issue and to protect themselves from potential liability under federal law. That the statements were admittedly self-motivated on a matter of private concern is inconsistent with any claimed intent to engage in public debate on these issues. *See Kentner v. Timothy R. Downey Ins., Inc.*, 430 F. Supp. 2d 844, 846 (S.D. Ind. 2006) ("Plaintiff concedes that his intent in serving the non-party discovery requests was to gather support for his claims in this litigation; thus, Plaintiff was not acting as a citizen 'in furtherance' of his right to comment on a public issue as is required by the Anti-SLAPP Act." (citation omitted)).

Moreover, it appears that plaintiffs' purpose in filing this suit is not primarily directed at stifling the defendants' speech rights. Rather the gravamen of the complaint is an attempt to have the prescriptions filled as prescribed and the defamation claims appear to be collateral to the main thrust of the suit. Accordingly, the Court finds that this "is not the type of lawsuit that the anti-SLAPP statute was enacted to prevent." *Hamilton v. Prewett*, 860 N.E.2d 1234, 1248 (Ind. Ct. App. 2007) (affirming dismissal of suit but denying award of attorneys' fees under anti-SLAPP because the suit was not "an attempt by [the plaintiff] to silence [the defendant's] speech on a public issue or an issue of public interest.").

Finding that the defendants have not sufficiently shown that their actions were in furtherance of free speech on a public issue or matter of public interest, the Court need not address whether the defendants acted in good faith for the purposes of anti-SLAPP. The anti-

SLAPP portion of the motion is therefore **DENIED**. However, the Court does not find that the motion was either "frivolous" or "solely intended to cause unnecessary delay," Ind. Code § 34-7-7-8, because the arguments appear to have been made in good faith by the defendants and without any intent to harass the plaintiffs. *See In re Walter Penner Trust*, 22 N.E.2d 593 (Ind. Ct. App. 2014) (stating claim is "frivolous" for the purpose of awarding fees under a separate Indiana statute "if it is made primarily to harass or maliciously injury another."). The Court therefore **DENIES** Dr. Kadambi's request for attorneys' fees in responding to the motion.

**B.      Qualified Privilege**

Defendants next argue that, even if anti-SLAPP does not merit summary judgment, Dr. Kadambi's claims fail because the defendants acted with a qualified privilege in making the statements at issue. The parties do not specifically address the standard of review this Court should use in determining whether the statements are protected by a qualified privilege. However, in arguing whether defendants made the statements in good faith, both parties submitted a number of documents not included in the pleadings. Accordingly, the Court construes this part of the motion as one for summary judgment and reviews it accordingly. Fed. R. Civ. P. 12(d); *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713–14 (7th Cir. 2013) (if considering evidence that is not referred to in the plaintiff's complaint, the district court must convert the motion to one for summary judgment).

Under Indiana law, a qualified privilege of common interest "applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public of private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Schraeder v. Eli Lilly & Co.*, 639 N.E.2d 258, 262 (Ind. Ct. App. 1994) (citing *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind.

16

1992)). "The essential elements of the defense of qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only." *Id.*

Dr. Kadambi challenges only that the statements were made in good faith. [DE 72 at 13.] The question of good faith can best be analyzed in the context of the specific statements that plaintiffs allege were made by the Accredo representatives. Dr. Kadambi alleges that the following statements were made:

- "the prescriber has been identified as providing growth hormone for anti-aging, longevity, rejuvenation, cosmetic, performance enhancement or sports medicine health services" [DE 58 at ¶ 27]

- "if you are getting it for actual medical reasons that is [sic] necessary, then you will have to get another prescriber who isn't identified as utilizing this prescription for those causes" [*Id.*]

- "Dr. Kadambi writes prescriptions for cosmetic reasons" [*Id.* at ¶ 28]

- "Dr. Kadambi is coming up as a plastic surgeon" [*Id.* at ¶ 29]

- Dr. Kadambi is on a "list" and involved with "sports medicine and anti-aging medicine" [*Id.* at ¶ 30]

- Dr. Kadambi's prescription was "fraudulent" and "illegal" [*Id.* at 31]

Defendants claim that each of the statements were made in good faith, based on an investigation undertaken by the pharmacists reviewing HGH prescriptions and the research done on Dr. Kadambi to determine "if that doctor or his or her practice advertises, writes about, lectures on, promotes, or is otherwise associated with prescribing HGH or recommending hormone replacement therapy for anti-aging, wellness, cosmetic, or sports medicine purposes." [DE 66 at

2–3.] Dr. Kadambi does not factually challenge that an investigation was conducted by Accredo or what was found during the course of that investigation. Instead, he claims that the statements were not in good faith because defendants conducted only limited discovery and turned a blind eye to information that they had been given by Dr. Kadambi in a previous lawsuit.

Good faith is defined as "a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable." *Nexus*, 942 N.E.2d at 122 (quoting *Owens v. Schoenberger*, 681 N.E.2d 760, 764 (Ind. Ct. App. 1997) (internal quotations omitted). In the context of a qualified privilege for defamation, good faith exists unless the evidence shows the speaker "lacked any grounds for belief as to the truth of the statements." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 189 (Ind. 2010) (quoting *Bals*, 60 N.E.2d at 1357). Good faith is a question of fact and "[i]f different inferences and conclusions could reasonably be drawn from the evidence" then the question should be submitted to a jury. *Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1234 (Ind. Ct. App. 2005). Further, where one party undertakes an investigation, but has some reason to doubt the accuracy of the information that it obtained, qualified privilege may not be appropriate. *See State Farm Fire & Cas. Co. v. Radcliff*, 987 N.E.2d 121, 142–43 (Ind. Ct. App. 2013) (finding insufficient evidence of good faith in light of fraud and omissions in investigative report).

Based on the arguments presented and the current state of the record, the Court finds genuine disputes of material fact regarding Accredo's good faith, precluding summary judgment at this time. Dr. Kadambi seems to argue that Accredo should have known that the information it obtained in its investigation was not true, based on the information previously shared in the prior litigation. The Court has no information regarding what information was shared with Express Scripts during the prior litigation with Dr. Kadambi, which resulted in the settlement agreement

at issue in Count III. The Court also has no information regarding the extent to which Accredo—who is alleged to have made the defamatory statements—is aware of information obtained through previous litigation between Dr. Kadambi and Accredo's parent company. However, drawing all reasonable inferences in favor of Dr. Kadambi, a rational jury could find that Accredo did learn of the information provided by Dr. Kadambi in the previous litigation and that such information would have caused Accredo to doubt the accuracy of what it learned about Dr. Kadambi in the search it undertook prior to declining to dispense the prescriptions in this case. Accordingly, the Court declines to enter summary judgment on Counts II and III at this time.

**C.     Privity of Contract**

The final ground on which defendants seek dismissal is that certain of the defendants were not parties to the settlement agreement at issue in the claimed breach of contract in Count III. Dr. Kadambi has not responded to this argument. It is true that, as a general proposition, "only a party to the contract can be held liable for its breach because contractual obligations are personal in nature." *Rodriguez v. Tech Credit Union Corp.*, 824 N.E.2d 442, 446–47 (Ind. Ct. App. 2005). Accredo—the only defendant alleged to have made any defamatory statements—was not a party to the settlement agreement. In light of this evidence, Dr. Kadambi offers no reason why Count III should survive.

This particular argument did not require the Court to look to any document outside (or not incorporated into) the complaint, so the motion on this ground need not be converted to summary judgment. *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (district court may properly consider, in ruling on a Rule 12(b)(6) motion, a document that is referenced in and central to the claims in a complaint, even if it was not attached to the

complaint). Accordingly, the Court **DISMISSES** Count III without prejudice for failure to state a claim.

## IV.      Motion for Preliminary Injunction

As noted earlier, there is also a pending motion for preliminary injunction, filed by the plaintiffs. [DE 54.] Briefing on that motion was stayed pending resolution of the defendants' dispositive motions. The focus of the motion for preliminary injunction is the defendants' claimed violation of Indiana law for failing to dispense the prescription as ordered. Having found that section doesn't provide a private right of action the Court **DENIES** the motion for preliminary injunction. [DE 54.]

## V.      Conclusion

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings as to Count I [DE 62] is **GRANTED** and Defendants' Motion to Dismiss Defamation Claims (Counts II and III) Pursuant to Indiana's Anti-SLAPP Act [DE 64] is **GRANTED IN PART** and **DENIED IN PART**. Judgment is entered in favor of defendants on Count I. Count III is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. Plaintiffs are granted leave to file, within 30 days of this decision, an amended complaint consistent with this opinion. Plaintiffs' Motion for Preliminary Injunction is also **DENIED** with leave to refile. [DE 54.]

SO ORDERED.

ENTERED:  February 5, 2015

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court